Good morning, Your Honors. May it please the Court, Harini Raghupathy from the Federal Defenders of San Diego on behalf of Mr. Zitlalpopoca. I'd like to reserve three minutes for rebuttal. Also, watch the clock. By the time of Mr. Zitlalpopoca's fourth resentencing, everyone agreed the guidelines range was 27 to 33 months. But the District Court imposed a sweeping upward variance to 200 months and imposed a $250 fine for the first time. There are many reasons why this case should be remanded for resentencing before a new District Court judge, but I'd like to focus on two reasons here. First, the vindictiveness of the Court sentence, and second, how the District Court improperly conducted the sentencing disparities analysis. I'm happy to answer any other questions, though, about any of the other errors we've alleged. So starting with vindictiveness, after being reversed three times, the District Court imposed a fine for the first time at Mr. Zitlalpopoca's fourth sentencing hearing. At this stage, both parties agree that that triggers a presumption of vindictiveness under North Carolina v. New Jersey. So I think that we all agree that there's a presumption of vindictiveness because of the fact that this new punishment was manifested. But that presumption can be overcome, right? That's correct. But the issue to me is whether that presumption has been overcome in this particular record. Why do you say it has not been overcome? So the reason I say it's not been overcome is that we look at the three reasons the government has provided to justify the enhanced sentence. They essentially don't withstand scrutiny. So I'll break those reasons apart. The first reason is the victim impact statement that one of the women provided just prior to the fourth sentencing hearing. And that was a reason that the District Court cited in its memorandum as a reason for the fine. But under North Carolina v. Pierce, the rule is that the reason justifying the enhancement has to be identifiable conduct on the part of the defendant occurring after the time of the original sentencing. But hasn't there been a swatch by subsequent Supreme Court cases where we're not really rigidly having to adhere to that principle, that there's a little more flexibility in the joints here? I don't believe North Carolina v. Pierce. It's been overruled in part by Alabama v. Smith, but my understanding is that part of the rule hasn't been eroded. But even assuming that, I think the bigger problem with Ms. Calixto's victim impact statement was that it didn't communicate any new information to the judge. And so she essentially was talking about the psychological impact that Mr. Zitwale-Popoca's conduct had on her. But the District Court throughout all three sentencing hearings was of the belief that the two women were psychologically damaged. And so, for example, at the third resentencing, the District Court said, this is pages 436 to 437, now if that's not psychological damage, I don't know what is. So this statement didn't communicate any new information to the District Court judge. It wasn't a valid reason for justifying the enhancement here. The two other reasons the government has provided, I think neither of those reasons are reasons the court itself provided. These are reasons the government is essentially pulling out of the record. But neither of those reasons withstand scrutiny either. So the second reason the government provides is that Mr. Zitwale-Popoca admitted his family was involved in the prostitution business. And so to the court, all of a sudden the scope of the criminal activity was enhanced. But the court knew from the very beginning of this case that it was, quote unquote, family business. And again, at the third resentencing, the court points to the involvement of Mr. Zitwale-Popoca's brother, his mother. And so this wasn't new information. This admission that his family was participating in it simply wasn't new. Let me question you. Did not the victim testify at this particular last hearing? And the judge was really taken by the testimony of the victim. Wasn't that something that happened after the original sentence? So factually, the victim didn't testify at the sentencing hearing. She submitted a victim impact statement. But the statement was new. It was new prior to the fourth resentencing hearing. So the statement itself was new, but the contents of the statement, which described the psychological impact, were not new. Just to clarify, did the victim actually appear and testify? She appeared at trial, Your Honor. At the trial. She did not appear at any of the sentencing hearings. So the third reason the government has provided is, again, this idea of the interplay between restitution and fines. But this falls apart, too, because if you look at the third and the fourth sentencing hearings, there's no meaningful difference between the restitutions and the fines. So by the time of the third sentencing hearing, we knew from this court's decision in Zitwale-Popoca 2 that mandatory restitution was off the table. The court had from his sentencing memorandum. Let me ask you this question. What if the additional monetary fine was $50 and not $250? Would your argument be the same? Yes, Your Honor. What if it was $10? I think any fine, even $1, any fine because the prior fine was $0, our argument would be the same. Even $1? Certainly, Your Honor. I think it's important to look at this from the lens of an indigent So a fine of $250 would be a relatively cheap fine. I'm not talking about that. I'm just talking about conceptually now. Is there a de minimis aspect to all of this? Or even $1 would create the presumption of vindictiveness? I don't believe there's a de minimis aspect to this. And I think the reason is if you go back to first principles, the reason for vindictiveness, the reason for this rule is that you don't want to punish people. You don't want to deter people from pursuing their I know that's your position, but it's a practical matter. It seems like an odd cup of tea to me, but go ahead. Was this issue raised at the district court? And if not, I mean, we have to review this for a plain error, right? It was raised in the district court. It was not raised at the sentencing hearing, but it was raised in a subsequent Rule 35 motion, which the government responded to on the merits. And then the district court actually addressed the Rule 35 motion in its memorandum. And so I believe that satisfies the purposes of preservation, which is to bring the error to the district court's attention and to allow the district court the opportunity to correct the error. The Rule 35 is really for technical, mathematical issues, right? That's correct, Your Honor. And I agree that it was an awkward vehicle to bring up this issue, but I think the broader purposes of preservation here were satisfied because again, the district court in its memorandum opinion, which it created three months after the Rule 35 motion, addressed some of the arguments in the Rule 35 motion. So the district court considered those arguments and it addressed it. And under this court's case law, I believe that's sufficient to satisfy preservation purposes. So your time is running. And let's assume that we don't agree that this vindictive, this aspect, this part of the mix before us. Why don't you tell us why we should otherwise reverse? Certainly, Your Honor. So the other reason this court should reverse is because the district court did not conduct the sentencing disparities analysis properly. And that constitutes not only an independent procedural error, but it also reflects bias on the part of the district court judge. What did the district court do that was wrong? The remand here was for the specific purpose of giving the district court the opportunity to evaluate the issue of comparativeness, right? Yes, Your Honor. So the thing the district court did wrong here was that it violated United States v. Monroe, which is a case from this court that says, for purposes of Section 3553A6, which is the need to avoid sentencing disparities, that defendants are not considered similarly situated if they're not found guilty of the same offenses. And that's the law of this circuit. And what the district court did here was to primarily compare Mr. Zutlaff-Papoka to defendants who were convicted of Section 1591, which was a conviction that Mr. Zutlaff-Papoka was acquitted of. But Monroe was really about co-conspirators, right? I mean, it's not really the situation here, but the disparity was comparing one person with another co-conspirator at a trial. I think those were the facts of the Monroe, Your Honor. But Monroe specifically talks about 3553A6, which is the statutory provision that's at issue here. So I don't think that Monroe can be categorized. But then that statute says similar, not same. Correct, Your Honor. But it says found guilty of similar conduct. But Monroe interpreting that statute says two people are not similarly situated if they're not found guilty of the same offenses. So by comparing Mr. Zutlaff-Papoka to people, for example, the defendant in Smith, the defendant in Fields, who were all convicted of Section 1591 convictions, the district court violated Monroe. And the problem here was that this court specifically held in the first round of appeals that Mr. Zutlaff-Papoka was not guilty of that crime of conviction. So here's my problem. I read the district court judge's justification for his determination that they were not proper comparators. And this was his marching order on remand. Now superficially, I'm somewhat sympathetic to the situation that he, there were a lot of 1591 cases out there, but he went through meticulously so many cases. My initial reaction before I read that was that, well, I'm a little troubled by that if in fact 10 or 11 of these cases that you put forward were 1591 cases that has some superficial appeal. But substantively, he went through every one and other cases on top of that. It seemed to me that he did comply with his marching orders from our court the last time we sent the case back to him. So factually, I mean, how do you take issue with that? Well, I think the reason, Your Honor, is that the cases that defense counsel proffered, the district court actually jettisoned completely. And those were the proper comparator cases because they involved common counts of conviction between Mr. Zilopopoca and those other defendants. And so it simply wasn't proper to compare Mr. Zilopopoca to defendants convicted of 1591. That's a 15-year minimum mandatory. But he focused on the conduct, not the nomenclature of the statute. He really went to the underbelly. That was my impression when I read through all of this. I mean, he really went over the top. I understand the case comes with a lot of hair, but at the same time, the case was sent back to the judge to do exactly what he did. And I thought he did it meticulously in terms of going through the conduct and dealing with all of these issues. But, you know, that was my sense. If you want to dissuade me from concluding that, go ahead. Well, Your Honor, I'd like to reserve some time for rebuttal, but... I think you're over, but we'll give you two minutes for rebuttal. Okay. All right. Thank you. Good morning, Your Honors. May it please the Court, Mark Ray for the United States. I'd like to address the issues in the order that my opposing counsel has raised them, starting with the fine. The government submits. We assumed that even just this $250 fine created a presumption of vindictiveness. When I did research, I didn't find any other case where it addressed specifically vindictiveness, where the custodial component didn't change, but there was a fine. That notwithstanding, the law is that so long as there's objective justification in the record, the vindictiveness presumption is rebutted. And one legal point I want to... I'm sorry. I may have missed that. You're saying that there is a presumption. You acknowledge that, right? Right. I'm assuming without conceding. And what is the basis for your contending that it was overcome, it was rebutted? That there were three separate things. First of all, the victim impact statement, which had never been in the record before. That particular victim... Was never in the record before? Correct. On the fourth sentencing, that was the first time. There were two victims, Ms. Dayla Cruz and Ms. Calixto. Ms. Dayla Cruz's victim impact statement was there, I believe. But the other one was not until the last sentence. The other one was not. And the other one was kind of remarkable. That was the victim who was crying at the end of the first sentence. She still was under the sway of the defendant. So it was something remarkable that by the fourth sentencing, that she had the strength to come forward with that. And Your Honor, I know you mentioned it earlier, she did not testify at the last sentencing hearing. She was going to be there the day it was originally planned. It got continued. Testified at the trial. She testified at the trial, but her statement was read verbatim at that fourth sentencing. And as Your Honor pointed out, the district court was very much moved by that. Now, I know my opponent, they rest very heavily on North Carolina versus Pierce. I believe that case was from 1965. As Your Honor pointed out, subsequent case law, Texas versus McCullough, Wasman versus United States, the Supreme Court has made clear that the test is not just whether it's new conduct. And in fact, Texas versus McCullough gives a good example. It says, imagine a case where somebody is convicted under an alias, and at the time of sentencing, the alias doesn't show a criminal record. And then by the time of the resentencing, they figure that out. It would be an absurd result now if you couldn't take into account the truth. So the subsequent case law says it just needs to be an objective event. One thing that at least makes me somewhat uneasy is the fine really doesn't seem to have too much connection to the new objective facts. I agree with you that the Pierce ruling has been eroded. And maybe, again, we can't really second-guess a district court decision. But you get a victim impact statement. You get information about involvement with the family. So maybe you adjust the sentence. But then 250, frankly, isn't a large amount. So in a way, it does seem a little bit petty. You have very serious victim impact statements. And the response is tacking on a $250 fine. Again, maybe, ultimately, we can't really second-guess a district court's decision here. But that makes me a little bit uneasy and suggests maybe it was a bit petty. But, I mean, if anything, is petty the kind of thing that would amount to vindictiveness? I mean, I think when you look at this record, you know, the district court, when it came time for the fine, it was at the end of a three-and-a-half-hour hearing. I think it was just force of habit. It says, oh, and what about a fine? And, you know, as we tried to point out, when there was restitution, the statutes say restitution is to take priority over a fine. Restitution is to be imposed without regard to ability to pay, whereas the guidelines say, you know, fines should be imposed unless there's an inability to pay. So I think the ultimate issue here, I mean, I don't see any necessary grounds for reversals possibly, but the ultimate issue is the due process issue of whether all of these circumstances really suggest that the judge really should not have been sitting on this case again after the fourth or fifth appeal. So can we consider this so-called petty fine that was affixed as some evidence of the fact that maybe he was biased, that maybe he just couldn't think clearly about what to do here? Because there doesn't seem to be any correlation between why a fine here, what's going on here. I mean, you would think that he wouldn't do that, but he did. So doesn't that bear upon the issue ultimately of whether due process rights were violated here and he was biased? Well, a couple of things, Your Honor. I think certainly it doesn't raise to the level of bias. The standard under LaTeX- Not by itself, but maybe it's one factor amongst other factors. Sure. But I would say, you know, first of all, look at the circumstances in which it came out. I mean, the judge literally says, you look like an able-bodied man. That doesn't sound to be anything inherently biased. Well, what does it have to do with opposing a fine? He was the same able-bodied person from the get-go. Right. But before, you had the first two sentencing that was mandatory. I mean, I understand, but I think in the big picture, Your Honor, when you look at the totality of the circumstances, and as Your Honor said, this last remand was for one purpose and one purpose only. It was to consider the unwarranted disparity. Are we limited to just that issue, or can we consider the totality of what preceded here on the issue of bias? Well, you know, again, I'm not afraid to say go ahead and consider it all, Your Honor. And as Judge Lee pointed out, I mean, even if you review that first section, it should be for plain error at most, even if it was just a petty $250 fine. The question is, was the judge under LaTeX so antagonistic, so one-sided? I mean, when you read, I reread the entirety of that 125-page sentencing hearing yesterday and the 44-page order, the court, looking at the totality of the circumstances, bent over backwards to give the defense as much time as possible. Repeatedly, you see instances in the record where he says, you know, when the defense counsel has trouble articulating her points, they slow down, I want you to make your record. At the very beginning of the hearing, the judge says, please, please, please, if I forget anything, let me know. This does not, you know, we would submit that is not evidence of bias. If anything, that is showing that I'm going to listen to every argument that you have. Well, it's a mixed bag. He was courteous. I read through it all carefully. He did say sit down, relax. I get that. But, you know, there's a cumulative impact here, I mean, which is somewhat troublesome. Do you think if it's that close a call, if this is a mixed bag situation, maybe the proper thing to do in terms of dispensing justice is to opt and be conservative about this and have another judge take a look at this whole thing, given the huge upward departure, given everything that's preceded here over the other four appeals? On the circumstances of this case, no, Your Honor, I don't. Because I believe that when you look back from the first sentencing, from 292 months down to 260 months down to 200 months, I mean, every time there's a new appeal, it's like a new minefield for this judge. This judge is, you know, sure, you can maybe say that in any case, but as far as... Trust me, I empathize with him. I have a vested interest as a district court judge. I've been there before. But when you write a 44-page opinion, you know, just it's a red flag that why is he so concerned? I don't think I've ever written a 44-page opinion to justify a sentence. It just seems that there's a lot of hair here. And I just wonder ultimately should we opt on the side of saying, look, fairness here, let another judge give this a shake. This is the judge that sat through... That's where, I think that's where we're at here. I believe, I mean, this judge sat through the entire trial. He, you know, has complied with every mandate that this court has issued. If just because every time the defense doesn't get everything they want, we're going to now say, oh, wow, that's, you know, this, the district court, which isn't exactly orthodox, and said, you know what, 150 months, we won't appeal. So, you know... This case lost orthodox a long time ago. Have you figured out how many hours you spent because of, and how much money the government spent for that $250, which indeed the government was prepared, the prosecutors prepared to push back, and the court declined to do that. Can the court, I mean, as I read the transcript in particular, in the part where he hits upon the $250 fine, it's after he's determined that the guideline range for the fine would be the lowest end, I think was $7,500, and he doesn't seem to recall what happened in the third hearing where when fine came up, for whatever reason, he decided not to get very far into the issue, and he said, well, what did I do before? No fine, okay, we'll just do that again, but of course that was when the restitution elements were in play. So at this time, he doesn't think about it, it's like he approaches the question of fine in the first instance, and looks and says, well, you look able-bodied, you must be working in prison, judge likely has a pretty good idea of how much people make in prison, it's not petty, I mean, this is like, what, 10 months earning, because you get something like 20, 25 bucks a month, something like that? He paid 26 a month, and the order was without interest, $25 quarterly. So every quarter, one of your months is going to go to pay this fine, it's not petty, but it's more symbolic than anything else as against the 7500. Okay, it's like he's approaching it fresh, now that may explain why it's not vindictive, but that's something fairly he can do without regard to what he'd done before on the subject of fine. Well, I think, you know, in the third sentence, he asked about a fine, the defense counsel said, my client can't afford to pay any fine, and he took that at face value, but I think the big picture to keep in mind here too, Your Honor, I mean, again, the whole purpose of the third remand was to address the unwarranted sentencing disparity. The fine comes in at the end of a three and a half hour hearing, it's not anything that's bad enough for the defense to object to at the time, you know, the judge, I think when you look at it, he's just doing it force of habit, this isn't even on his radar, so how this could, you know, plausibly support, you're over your limit, but just clarify this for me, the, of course I can have clarified here, I just had a senior moment here, so he actually dealt with that issue as if this was the first time he was dealing with the fine issue, is what you're saying, no, here's what I thought about it, you, did you agree that the 150 months would be an appropriate sentence here and finish with this case and get done and over with it, was that the government's position? No, that was the defense counsel's position. What was the government's position? To defend the 200 month sentence, that was important. You never concurred that 150 months would be appropriate, make that a recommendation to the judge and finish with all of this? No, correct. You, you stated. It was just the fine when it came up later that you were willing to wave goodbye to. Right, and as we pointed out in our response at the time, you know, the claim was that it was vindictive then, we said for the record, we don't think it's vindictive, but we weren't sure if that's exactly what. And it wasn't worth raising the, that issue and the number of hours you've spent on the issue ever since for the 250 hours. Here we are having spoken a lot about this fine when the sole purpose of that remand was to talk about this fine. None of us are being paid enough for that 250 hours. I love my job, your honor, I'm going to do what's in front of me, but you know, we were trying to defend the 200 month sentence that was, that was imposed the third time around. The remand was simply for the court to address this argument of disparity and it did. So we were going to stay. I get it. But you know, you had the prosecutorial discretion to recommend, look, 150 months, it's a substantial amount of incarceration. Let's get done with this instead of having appeal after appeal. You just chose not to do that. Yeah, no, we were standing, you know, and I bet whatever else we said, there would be, you know, there will always be guns of this enormous upward departure, the 46 month range, and it's going to come out to be 200 months. You have an enormous upward departure here. I get it. You have the reversals here on the 1591 issue. I guess you're relying upon the fact that this new evidence about his conduct in Mexico could be considered as uncharged conduct and therefore the judge had the power to consider that in the sentencing decision that he made. I don't know if it's so much uncharged conduct, but it was him admitting it for the first time. What? It was him admitting it for the first time. The reason, you know, this was a 100 month sentence per victim, not a day, a week, a month of prostitution, years, two victims, 17 and 18, groomed, subject to violence. That's why the judge imposed that upward variance, and that's exactly the discretion that Booker empowered. And that had nothing to do with the sentence, which is just predicated upon his conduct in the United States. So I take it that this is all kind of uncharged conduct that wasn't considered before, but he made findings that he could consider this in his sentence. It's relevant conduct. Under 18 U.S.C. 3553, the judge can consider the totality of the circumstances, and I believe it's 3611 or 61 that says there shall be no limit on the information that a sentencing judge can consider. So for that reason, Your Honor, unless there are any further questions, we would submit. Thank you. Why can't the court consider this as relevant conduct, or even if it were uncharged conduct, or even if it were acquitted conduct? Is that within the province of the sentencing judge to consider all of these factors on imposing a sentence? Your Honor, just so I understand the question, when you say this, do you mean his conduct in Mexico? Yeah. I think the court... Apparently that's what triggered his sentence. I don't think that's clear from the record, Your Honor, that his conduct in Mexico triggered the sentence. Well, we'll talk about that. I mean, I guess he has to have some justification for this enormous upward departure, notwithstanding the reversals by our court in terms of his conduct in the United States. But it seems to me that he was considering conduct in Mexico, that he did make findings about that, and that's what really triggered this high sentence. Am I reading it wrong? I don't think that's incorrect, Your Honor. But I think the problem here, if you look at it cumulatively, as you said, the first thing, I understand that a fine seems de minimis, and Mr. Rahe said that it was force of habit. But if it were force of habit for the district court to impose the fine, why didn't it rescind the fine by the time of the memorandum decision? You're talking about the fine. I'm talking about something which I consider to be more substantive, perhaps? Yes. The fact that he considered the conduct in Mexico, which was not before our court in prior determinations, is he entitled to consider that conduct as relevant conduct, or even uncharged conduct, as a sentencing judge? I think he is, Your Honor, under the state of the law, yes. So why is that improper? That was never an argument that we raised. You're not making that argument at all? No. All right. So then what is the heart of your argument? Is it just this fine dynamic? The heart of our argument is that this was a case where the judge imposed, or reflected bias in sentencing Mr. Zitlapopoca and was vindictive. And I think if you go back... Where is that bias manifested? You're not saying that he did anything inappropriate by considering his conduct in Mexico. So what is it that he did that was wrong? We are saying he did things inappropriately. The specific things were that he used the wrong comparison cases because he was viewing Mr. Zitlapopoca as someone convicted of 1591. When Mr. Zitlapopoca didn't testify, and there was no controverted testimony about his family turning away from prostitution, the court held that against him. And I think it's important to look at Chief Judge Freudenthal's dissent in the last round. She was concerned about remanding this case to Judge Benitez last time around because she thought that some of his statements about the effect that this conduct had on the victims was unsupported by the testimony at trial. And I think the judge's statements at the fourth resentencing really show that her concerns have come to bear. And for that reason, the case should be remanded, not just for resentencing, but to a different judge. Thank you. Great. Thank you. The case has been submitted.
judges: Clifton, Block, Lee